Filed 5/9/16  P. v Reel CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHARLES STANLEY REEL, JR.,<br><br>    Defendant and Appellant. | 2d Crim. No. B263237<br>(Super. Ct. No. 2014032317)<br>(Ventura County) |

Charles Stanley Reel, Jr. was charged with continuous sexual abuse of a child.  (Pen. Code, § 288.5, subd. (a).[1])  He pled guilty pursuant to a plea agreement providing that he would serve no more than six years in prison, the low term for the offense.  He agreed that he would be ineligible for probation unless the trial court made the findings set forth in subdivision (d) of section 1203.066.[2]  The plea agreement further provided that the prosecution would oppose probation.

---

[1] All further statutory references are to the Penal Code.

[2] As relevant here, those findings are that (1) "rehabilitation of the defendant is feasible and ... the defendant is amenable to undergoing treatment, and ... is placed in a recognized treatment program designed to deal with child molestation immediately after the grant of probation"; (2) "the defendant [is prohibited] from being placed or residing

The trial court found that probation was inappropriate and sentenced Reel to six years in prison. Reel contends that the court abused its discretion by selecting state prison over probation. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Reel lived in Ventura with his wife and three children. When victim N.P. was four years old, she moved in with her grandmother, who lived on the same street as Reel. N.P. became good friends with Reel's eldest son and spent a lot of time at Reel's home. She looked to Reel and his wife as parental figures. When she was around seven years old, she regularly ate and showered there and at times spent the night. Reel would take N.P. and his son to the pool at their mobilehome complex or the skate park. N.P. also went with them to family events and baseball games and on camping trips.

On three or four occasions, N.P. and her sister were in the complex's Jacuzzi with Reel when he exposed his genitals to them. Another time, N.P. came over and sat on Reel's lap. Reel covered the two of them with a blanket, reached under her shirt, and rubbed her chest. He then reached underneath her shorts and underwear and moved his hand around. N.P. did not say anything but was "uncomfortable [and] scared to get up." The incident lasted five to ten minutes. On subsequent occasions, he would rub her chest and vagina with his hand while seated on the recliner or the couch.

One day N.P. went to Reel's home looking for his son. Reel invited her inside and told her that his son was not home but that she could wait for him to return. N.P. sat on the edge of Reel's bed. He played a video depicting a male and female and told N.P. that the female reminded him of her. Standing right behind her, he stated, "Do you mind if I take my clothes off?" N.P. placed her hand over her face to avoid seeing

within one-half mile of the child victim's residence for the duration of the probation term unless the court, on the record, states its reasons for finding that this residency restriction would not serve the best interests of the victim"; and (3) "there is no threat of physical harm to the victim if probation is granted." (§ 1203.066, subd. (d)(1)(B), (D), (E).)

what he was doing, but she could still hear him. He asked her to turn around, and she saw him ejaculating. She got up and left the room.

N.P. did not enter Reel's home by herself after she was nine years old, although she continued going there. His attitude towards her changed. "[I]t was like nothing ever happened." She never spoke to him about his behavior and was afraid of disclosing the abuse.

After more than 15 years passed, N.P. had children of her own. She took them to the "Reel Family Daycare" run by Reel's wife out of their home. N.P.'s friend Kayla Eagle told her to be cautious leaving her children there because Eagle had several friends who had been molested by Reel as children. N.P. told Eagle that Reel had molested her also. Eagle reported the abuse to the police.

At the sentencing hearing, the trial court stated that it had reviewed the reports from the probation officer and Reel's sentencing specialist and "[had] give[n] this case a great deal of thought." The court concluded that although probation was an option, "I just cannot see . . . a grant of probation in this case given the nature of the sexual conduct and the number of allegations of other conduct with other girls and the time period . . . over which the acts took place." The court found that "the victim in this case was particularly vulnerable in that she ... went to [Reel's] home because her own home was not so good." The court further found that Reel "was in a position of trust over the victim, and it is substantial sexual conduct not of the type that normally a grant of probation would be appropriate for. And in some ways, although [he] was not a legal family member, he was certainly in a position to be one at the time these incidents took place."

The trial court stated that it had taken into account "the four principles of sentencing"—rehabilitation, deterrence, protection of the public, and retribution. It believed that the low term "takes into consideration [Reel's] lack of a prior criminal history." The court "appreciate[d]" that he "may have made some positive changes in [his] life." It read letters from his wife and family and considered how a prison sentence

3

would affect them.  Ultimately, the court concluded that Reel's "conduct on the . . . victim" and "the period of time that [he] did it" was "sufficient to warrant a state prison sentence."

DISCUSSION

Reel contends that the trial court erred by not sentencing him, a first time offender, to probation.  He argues that a prison term "would have a devastating effect on [him]," he was remorseful, he scored a zero on the Static-99R test of risk for sex offender recidivism, and any public safety concern would be addressed by his required participation in a sex offender treatment program.  We review the court's sentencing decision for abuse of discretion.  (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

"The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.'  [Citation.]" (*People v. Sandoval*, *supra*, 41 Cal.4th at p. 847.)  A trial court will abuse its discretion "if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision.  [Citations.]  A failure to exercise discretion also may constitute an abuse of discretion.  [Citations.]" (*Id.*, at pp. 847-848.)

As Reel points out, the Legislature made probation available to first time offenders who commit continuous sexual abuse of a child.  (§ 1203, subd. (e)(5).)  The trial court here, however, did not "substitut[e] its rule, that probation is unavailable because of the nature of the crime that [he] committed, for the Legislature's rule." Rather, the court recognized that probation was available, but after thoroughly weighing all of the relevant factors in favor of and against a prison term, decided that prison was the appropriate sentence.  It was a paradigmatic exercise of discretion.  Reel "simply disagree[s] with the court's weighing of [sentencing] factors" and asks us to reweigh them, which we cannot do.  (*People v. Carmony* (2004) 33 Cal.4th 367, 379.)

4

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

Nancy L. Ayers, Judge

Superior Court County of Ventura

_____


Richard Lennon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and David A. Voet, Deputy Attorney General, for Plaintiff and Respondent